STEVE JOSEPH WEST *v.* STATE OF INDIANA

[No. 2-776A274. Filed December 19, 1978.]

*Noble R. Pearcy*, of Indianapolis for appellant.

*Theodore L. Sendak*, Attorney General of Indiana, *Alembert W. Brayton*, Deputy Attorney General, for appellee.

SULLIVAN, J. — After trial to the court, West was convicted of Theft[1] and Entering to Commit a Felony.[2] His appeal presents two issues[3] for review:

(1)   whether the trial court erred in permitting a civilian witness to testify, over objection, as to certain statements made by West after his arrest, and

(2)   whether the conviction of Entering to Commit a Felony is supported by sufficient evidence.

We affirm.

## I.

Approximately two hours after closing, a Wasson's Department Store burglar alarm was triggered. Soon thereafter Officer John Patterson

---

1.   IC 35-17-5-3 (Burns Code Ed. 1975).
2.   IC 35-13-4-5 (Burns Code Ed. 1975).
3.   A third allegation of error (establishment of venue) is waived by West's failure to argue the issue in his appellate brief. Ind. Rules of Procedure, Appellate Rule 8.3(A)(7).

arrived at the scene, but because the building was secured, he was unable to enter. Mr. Allen Bucksot, as assistant store manager who also served as a special deputy on the Marion County Sheriff's Department, was summoned to unlock the doors and, after a brief search of the first floor, he and Officer Patterson found West crouched in a stairwell. Patterson placed West under arrest and advised him of his rights, but at trial could not recall whether West had been advised that if he could not afford an attorney, one would be appointed for him. For that reason, the trial judge refused to allow Patterson to testify about any conversation he may have had with West. However, the trial judge did allow Bucksot's testimony as to *his* conversation with West.

West contends that Bucksot's testimony should have been excluded for the same reason as Patterson's — there was not an adequate advisement of rights. In a short, two-paragraph argument, appellant's brief gives this issue cavalier treatment, referring solely to *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602 as authority for his argument.

West argues that the conversation between Officer Patterson and himself was *overheard* by Bucksot and, therefore, Bucksot's testimony as to those statements made by West should have been excluded. This argument distorts the record beyond recognition.

Due to trial counsel's[4] timely objection and disclosure of inadequate *Miranda* warnings, Patterson was not permitted to state whether he had a conversation with West. On the other hand, Bucksot was asked:

"Q. Okay, and, subsequent to that did you have occasion to have a conversation with the defendant, Steve West?

A. Yes, sir, I did.

Q. What, if anything, did you say to him and what, if anything, did he say to you?

"MR. TEIRUMNIKS: To which I'm going to object, Your Honor, for the reasons previously stated. . . .

\* \* \*

---

4. It is important to note that trial counsel does not represent appellant upon this appeal.

THE COURT:    Objection's overruled. You may answer.

Q. What was the substance of that conversation?

A. Well, Officer Patterson, Mr. West, and a few other officers from the City Police Department were on the first floor of the store. Mr. West was sitting on the up escalator, which was turned off at the time, and we was wasting time, killing time while other police officers were searching the building which canine dogs to see if anyone else was in the store. During this time, I was talking with Mr. West and asking him why he was in the store, et cetera, and he relayed to me that he came in the store earlier in the afternoon to fill out an application for a job, and he also said that at the time he came in the store he had been drinking and he thought maybe he should sleep it off before he applied for a job. He also said that he went to the 7th floor of the store, which is strictly a stockroom, and fell asleep behind some cardboard boxes, merchandise boxes, and when he woke up the store was closed; and the 7th floor has a screen gate on it, which closes it off from the escalators and elevators. No one can enter the floor. He said that, he relayed to me that he had pried the gate open and crawled out of the gate, and came down the stairways to the first floor."

Statements obtained in response to custodial interrogation conducted without appropriate warnings are rendered inadmissible by *Miranda.* By "custodial interrogation" the *Miranda* court meant "questioning initiated *by law enforcement officers* after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona, supra,* 86 S.Ct. at 1612. (Emphasis supplied). See also, *Oregon v. Mathiason* (1977), 429 U.S. 492, 97 S.Ct. 711, 713. Thus, the crucial issue is whether West's statements were the product of "custodial interrogation" within the meaning of *Miranda.* See Annot., 31 A.L.R.3d 565 (1970).

West does not argue that the questioning was instigated by the police or that Bucksot was acting in the capacity of a law enforcement official as in *Rosario v. Guam* (9th Cir. 1968), 391 F.2d 869. Further, West does not contend nor is there evidence that Bucksot was at the scene in any role other than that of assistant store manager. Indeed, the record establishes that Bucksot was called to the scene only because the police

were unable to enter the building. Finally, we note that West does not claim his statements to be otherwise involuntary or the product of coercion.

The guidelines of *Miranda* are inapplicable to questioning initiated by private persons. *Yates v. State* (1978), 267 Ind. 604, 372 N.E.2d 461; *Luckett v. State* (1973), 158 Ind.App. 571, 303 N.E.2d 670. *Cf., Trinkle v. State* (1972), 259 Ind. 114, 284 N.E.2d 816 (private person protecting home or property "may solicit information from one infringing on his rights in a manner which, if done by a police officer would be disallowed as violating defendant's constitutional rights"). Because, after a careful review of the record, we cannot say that Bucksot was acting as a law enforcement official, West's statements were not the *product of* "custodial interrogation" within the meaning of *Miranda*. The determinative principle is that *Miranda* does not apply to purely private interrogation. *McFarland v. State* (1975), 263 Ind. 657, 336 N.E.2d 824. The trial court did not err in permitting Bucksot's testimony as to his conversation with West. *United States v. Delay* (8th Cir. 1974), 500 F.2d 1360. See also *United States v. Antonelli* (2d Cir. 1970), 434 F.2d 335; *State v. Little* (1968); 201 Kan. 94, 439 P.2d 387.

## II.

West next claims that his conviction of Entering to Commit a Felony is not supported by sufficient evidence in that 1) there is no evidence of forced entry, 2) there is no evidence *when* West entered the building and 3) there is no evidence that at the time he entered Wasson's, he possessed an intent to commit a felony.

We fail to see the relevance of West's first two assertions. A conviction of "entering" does not rest upon proof of forced entry nor does it require proof of the time at which entry was gained. However, the question whether West had the requisite criminal intent is deserving of discussion.

Patterson and Bucksot found West crouched in a stairwell hours after the store had closed. West was wearing clothes taken from Wasson's and was surrounded by paper sacks containing similar contraband. From these facts it may reasonably be inferred that West had the intent to commit theft at the time he entered the store.

*Tinsley v. State* (1975), 164 Ind.App. 683, 330 N.E.2d 399; *Bellamy v. State* (1975), 165 Ind.App. 27, 330 N.E.2d 377.

The judgment is affirmed.

Buchanan, C.J., concurs.
Shields, J., concurs in result.

NOTE — Reported at 383 N.E.2d 398.